374 P.2d 716

R. J. MERCER, Plaintiff-Appellant,

v.

Gwen D. SHEARER, doing business as Shearer Lumber Products, and Carl Peterson, Defendants-Respondent.

No. 9060.

Supreme Court of Idaho.

Sept. 20, 1962.

Rehearing Denied Oct. 5, 1962.

J. H. Felton, Lewiston, for appellant.

Swayne & McNichols, Orofino, for respondent.

538

McFADDEN, Justice.

This action arises out of an alleged trespass on plaintiff's timber grounds claimed to have taken place between November 1953 and March 1954. After the plaintiff had fully submitted his case and rested, the defendants submitted a motion for directed verdict or in the alternative for nonsuit on the ground of failure of proof. Immediately thereafter and before the court ruled, the plaintiff moved to amend his complaint. The trial court denied plaintiff's motion to amend, and granted defendants' motion of dismissal and judgment was entered therein.

Plaintiff's title to the lands involved in this action is based on a deed from his uncle, C. D. Mercer and wife, dated May 23, 1951, recorded, January 12, 1953. In November 1953, one Lewis Holt (who is not a party to this action), as first party, contracted with defendant Peterson for Peterson to cut timber from the Mercer properties, and haul it to defendant Shearer's mill, for which he was to be paid $21.50 per thousand board feet. This agreement provided that defendant Shearer would pay Peterson and charge Holt for the amount of such payments. The agreement recited that there were approximately 30,000 feet

of timber already cut and decked on the Mercer property, which was to be hauled by Peterson to the Shearer mill, for which Peterson was to receive only $14.00 per thousand. The record also shows that Holt had been logging on the Mercer tract before execution of the agreement with Peterson, but to what extent is not clear.

Plaintiff filed his complaint in August, 1955, alleging that Peterson was a servant and employee of Shearer to cut the timber from plaintiff's premises and haul it to Shearer's mill, and that Peterson was acting under Shearer's instructions in going on the premises and cutting the timber. The complaint also charges the defendants with damaging a meadow and springs, and in tearing down two hundred yards of fencing. Plaintiff prayed treble damages for the timber trespass under the provisions of I.C. § 6–202 against the defendants, with general damages for the injury to the meadow and the fencing.

By separate answers, defendants Shearer and Peterson each generally denied the allegations of plaintiff's complaint. Peterson further alleged that Lewis Holt was the owner of the timber rights on the lands claimed by plaintiff; that he logged the lands pursuant to the logging agreement with Holt. As an affirmative defense, Peterson claimed he was released from any claim of plaintiff by reason of a discharge by the

United States District Court of Idaho in bankruptcy, plaintiff's claim having been one of the claims adjudicated in that bankruptcy. On trial, Peterson's testimony on cross-examination under the statute as to this discharge was wholly uncontroverted.

■■ It affirmatively appears from the Holt-Peterson logging contract, admitted in evidence, and from the testimony of Peterson, elicited on cross-examination by plaintiff under the statute, that Peterson was an independent contractor, not with Shearer, but with Holt. Responsibility for wrongful acts of Peterson could not be imputed to Shearer without affirmative proof of ratification and adoption of such acts, (Bailey v. Idaho Irrigation Co., Ltd., 39 Idaho 354, 359, 227 P. 1055) or the establishment of some relationship whereby Shearer exercised or had the right to control, direction or supervision of Peterson. Bill v. Gattavara, 24 Wash.2d 819, 167 P.2d 434. The record is devoid of any evidence from which it can be inferred there existed any agency or master-servant relationship, as to subject Shearer to responsibility for Peterson's acts. See 27 Am.Jur. 504, Independent Contractors, § 27.

Plaintiff's proof wholly failed to sustain the allegations of his complaint that Peterson was an agent, servant or employee of Shearer to cut the timber off plaintiff's premises.

In regard to the matter of proof as to the damages sustained by plaintiff, by his own testimony he first attempted to show the amount of timber on his premises when he first purchased it. Objections were interposed to this testimony for the reason that plaintiff did not show he was qualified to estimate the amount of timber on his property. The objections were sustained, but the court's ruling in this regard were not assigned as error. The record is devoid of evidence as to the amount of merchantable timber at the time of acquisition of the property by plaintiff.

Questions were then interposed to plaintiff as to his knowledge of the prices of timber in Orofino, and he was asked:

"To the best of your information on such matters, what were reasonable prices for your timber on your land at that time?"

Again an objection was interposed, on the ground that no proper foundation was laid, and for the reason that the issue was not what was the reasonable price, but what was the market price. This objection was also sustained, and again the court's ruling was not assigned as error. Next the witness was asked as to his opinion of the value of the timber which Shearer took off the Mercer place, and again an objection was sustained, but not assigned as error. Finally, he was asked: "And are you familiar with the value of timber?" Plaintiff's reply was "Well to the best of my ability". The next question, "And what was it?" was objected to, and before a ruling, plaintiff's counsel withdrew the question.

Another witness for plaintiff, Mr. Tallman, who subsequently logged on the Mercer tract, was asked if he was familiar with the going price of stumpage in 1953 as to that area, and an objection was interposed on the basis that the witness had not shown himself qualified to answer, and that no proper foundation was laid. An offer of proof was to what this witness would testify to was made, and rejected. No error was assigned as to any of these rulings. This witness also testified that he had not gone over the area logged by Holt and Peterson to determine the quantities of logs removed, and that any comparison he made as to the amount he logged as compared with that of Holt and Peterson would be so rough it wouldn't be very accurate. In reply to the question asked him if he knew of other sales of timber in the neighborhood besides his own sales, this witness stated: "I can't say I know of other sales, but I don't know the stumpage price."

■ It is thus clear that the record fails to establish two essential elements of plaintiff's claim for damages, i. e., first, the actual amount of timber claimed to have been taken, and secondly, the market value of

the timber in the area at the time of the alleged taking.

Next the plaintiff attempted to establish his damages by showing the diminished value of the land by reason of the timber trespass by Holt and Peterson. Holt prior to his contract with Peterson, this contract being admitted in evidence, had engaged in logging on the Mercer tract in September of 1953. Plaintiff's attempt to show damages by diminished land value failed to make any allocation of damages attributable to Holt, as against damages attributable to Peterson. Holt was not named as a party to this action, and absent proof of the amount of damages chargeable to Holt for the trespass, this proof was insufficient to establish such damages chargeable to Peterson. Such proof, assuming but not deciding that such measure of damages was proper, was so uncertain that no award could be based thereon. The general rule is that where there is evidence of damages from various causes or by separate individuals at different times, as to a portion of which the defendant cannot be held responsible, and no evidence of what portion of the damages arose from the separate causes, the proof is too uncertain to permit the jury to apportion a part of all the proved damages to the acts for which the defendant is responsible. Wintersteen v. Semlar, 197 Or. 601, 250 P.2d 420, 255 P.2d 138. 15

Am.Jur. 413, Damages § 22; 25 C.J.S. Damages § 28, p. 496.

As to plaintiff's assignment of error directed to the court's refusal to allow amendment of the pleadings, as previously pointed out, plaintiff's cause of action was initially filed in 1955. After withdrawal of his first attorney, his present attorney represented him for a year prior to trial of the cause. Leave to amend the complaint, after plaintiff had initially rested his case lies within the discretion of the trial court. I.R.C.P. 15(a), requires leave of court to amend, and this requirement contemplates exercise of discretion by the court.

In construing the Federal Rule 15(a), 28 U.S.C.A., from which I.R.C.P. was taken, Federal courts have recognized that amendments should be liberally given, but as was stated in E. I. DuPont De Nemours & Co. v. U. S. Camo Corporation, 19 F.R.D. 495, 497, (W.D.Mo.1956).

"Nevertheless the party seeking to amend should exercise due diligence, and unless delay can be attributed to excusable oversight leave to amend perhaps should be denied."

In United Exhibitors v. Twentieth Century Fox Film Corporation, 18 F.R.D. 469, 473, (W.D.Pa.1956), it is said:

"There has been a complete lack of diligence on their part without any substantial showing of excusable oversight."

In Hancock Oil Co. v. Universal Oil Products Co., 120 F.2d 959–961, (9th Cir. 1941), in discussing an amendment of a counterclaim, the court stated:

"We see no need for a further consideration of this question, for whether the proposed counterclaim was compulsory or permissive, still the fact remains that the motion was for leave to amend a counterclaim already on file, over two years after it was filed. Whether or not this amendment would be allowed was in the sound discretion of the trial court, and the decision of that court will not be reversed except for an abuse of its discretion."

In the instant action no abuse of discretion on the part of the trial court is discernible, and his refusal to allow the amendment will not be reversed. Even if such amendment were allowed, it would avail the plaintiff nothing, for under any theory, his proof on damages was insufficient.

Plaintiff's other assignments of error directed to rejection of offered exhibits are without merit; even if the exhibits were admitted, they had no probative value in the areas wherein plaintiff's proof was fatally defective.

Judgment affirmed.

Costs to respondents.

SMITH, C. J., TAYLOR and KNUDSON, JJ., and SPEAR, D. J., concur.