570 P.2d 284

Milford JONES and Hazel Jones,
Plaintiffs-Respondents,

v.

Albert WATSON and Madeline Watson,
Defendants-Appellants.

No. 12176.

Supreme Court of Idaho.

Oct. 7, 1977.

Lloyd J. Webb, Webb, Burton, Carlson & Pedersen, Twin Falls, for defendants-appellants.

Frank M. Rettig, Rettig, Fredericksen & Williams, Jerome, for plaintiffs-respondents.

McFADDEN, Chief Justice.

Milford and Hazel Jones, plaintiffs-respondents, filed suit against Albert and Madeline Watson, defendants-appellants, alleging that they are holders of a promissory note executed by the Watsons, and that the Watsons failed to make payments on the note when due. The Jones sought judgment for the amount of the note, plus interest and attorney's fees. After trial, the court entered judgment in favor of plaintiffs. Defendants have perfected this appeal, and we affirm.

Plaintiffs are the holders of a $10,000 promissory note executed by defendants on January 26, 1967. The note provides for three equal payments of principal, with interest, on February 1, 1967, September 30, 1967, and September 30, 1968. At various times prior to September 13, 1967, defendants paid amounts totaling $1,900; no further payments were made.

On June 21, 1973, the Jones filed this action, together with an application for a writ of attachment. An order to issue the writ of attachment was signed by the district judge on the same day. An order to show cause why a writ of attachment should not issue was entered June 21, 1973 and the writ was issued on June 22, 1973. A hearing was set for July 3, 1973, but the matter was continued because service of the Order to Show Cause had not been returned.

On June 13, 1974, defendants filed an answer, and motion to vacate the attachment. Nothing further transpired until the day set for trial, September 26, 1975. Defendants then requested leave to amend their answer to include a defense of statute of limitations and a counter-claim for wrongful attachment. The court granted leave to amend the answer to reflect a defense of statute of limitations, but refused permission to include the counter-claim. Following trial, judgment was entered in favor of the plaintiffs.

Defendants first assign as error the trial court's ruling that plaintiff's action is not barred by the statute of limitations. All agree that the applicable statute of limitations is I.C. § 5–216, a five-year limitation on actions brought to enforce a written contract. On June 21, 1973, when the complaint was filed, the five-year period had expired for the first two installments of the promissory note. However, I.C. § 5–229 provides that if after a cause of action accrues, the defendant departs from the state, the time of his absence is not part of the time limited for the commencement of the action. The defendants here left Idaho

in 1968, and subsequently resided in Arizona. Defendants contend that when the answer was originally filed, they believed that the statute of limitations had been tolled because of the provisions of I.C. § 5–229 and this court's holding in *Staten v. Weiss,* 78 Idaho 616, 308 P.2d 1021 (1957). On June 12, 1975, this court released its decision in *Lipe v. Javelin Tire Co., Inc.,* 96 Idaho 723, 536 P.2d 291 (1975) (a personal injury case). In that opinion, this court overruled *Staten* and held that the statute of limitations is not tolled for an out-of-state defendant who is susceptible to service of process under the provisions of the "long-arm" statute, I.C. § 5–514, if the defendant can be located for service of process with reasonable diligence. Here the trial court found that plaintiffs knew of defendants' whereabouts. Defendants assert that they could have been served via the long-arm statute; thus, they contend that the statute of limitations was not tolled and the action is barred. On the day of trial, defendants moved to amend their answer to include the defense of statute of limitations. The court allowed the amendment, but ruled that the holding in *Lipe v. Javelin* should be applied prospectively only. Thus, the court concluded that the statute of limitations was tolled so long as defendants were out of the state. Defendants argue on appeal that *Lipe* should be applied retroactively.

The alternative of prospective application of decisions has a sound basis in policy and legal theory. As the Washington Supreme Court noted:

"So it is that the doctrine of prospective overruling has attached in many areas: in constitutional law, contracts, torts, criminal law, taxation, and in the field of procedure, giving the doctrine both sanction and acceptance throughout our jurisprudence. Prospective overruling imparts that final degree of resilience, to the otherwise rigid concepts of stare decisis, so necessary to prevent the system from becoming brittle. It enables the law under stare decisis to grow and change to meet the ever-changing needs of an ever-changing society and yet, at once, to preserve the very society which gives it shape." *State v. Martin,* 62 Wash.2d 645, 384 P.2d 833, 849 (1963).

■ The determination of whether an overruling decision shall be applied retroactively or prospectively, is a matter left to state courts for determination on a case-by-case basis. As the Alaska Supreme Court noted:

"A state supreme court has unfettered discretion to apply a particular ruling either purely prospectively, purely retroactively, or partially retroactively, limited only 'by the juristic philosophy of the judges * * * their conceptions of law, its origin and nature.' The decision is not a matter of law but a determination based on weighing the merits and demerits of each case. Consideration is given to applying a ruling prospectively 'whenever injustice or hardship will thereby be averted.'" *Warwick v. State ex rel. Chance,* 548 P.2d 384, 393 (Alaska 1976).

See, also, *Great Northern R. Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 365, 53 S.Ct. 145, 77 L.Ed. 360 (1932); *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *Thompson v. Hagen,* 96 Idaho 19, 523 P.2d 1365 (1974); *Sims v. State,* 94 Idaho 801, 498 P.2d 1274 (1972); *Dawson v. Olson,* 94 Idaho 636, 496 P.2d 97 (1972); *Smith v. State,* 93 Idaho 795, 473 P.2d 937 (1970); 10 A.L.R.3d 1371. As this court noted in footnote to *Dawson v. Olson, supra,* "those issues have subsequently become questions of 'judicial policy rather than of judicial power.'" 94 Idaho 636, 639, 496 P.2d 97, 100; see also, Annotation, Prospective or Retroactive Application of Overruling Decision, 10 A.L.R.3d 1371, 1378.

■ In exercising the discretion to determine the effect to be given a decision, courts have relied on a widely varying spectrum of factors. See, e. g., *Li v. Yellow Cab Co. of California,* 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975) (fairness and public policy); *Vaughn v. Murray,* 214 Kan. 456, 521 P.2d 262 (1974) (justifiable reliance on the earlier law, nature and pur-

pose of overruling, res judicata, vested right accrued by earlier law, administration of justice); *Richey v. Cherokee Lab., Inc.,* 515 P.2d 1377 (Okl.1973) (substantive rights); *Neel v. Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal.3d 176, 98 Cal. Rptr. 837, 491 P.2d 421 (1971) (extent of public reliance and ability of litigants to foresee the coming change in the law); *So. Pacific Co. v. Cochise County,* 92 Ariz. 395, 377 P.2d 770 (1963) (hardship and economic hardship). This court has enunciated three criteria to be evaluated in determining the effect of a ruling: 1) the purpose of the decision, 2) reliance on the prior rule of law, and 3) the effect upon administration of justice. *Rogers v. Yellowstone Park Co.,* 97 Idaho 14, 25, 539 P.2d 566 (1974) (McFadden, J. on rehearing); *Thompson v. Hagen,* 96 Idaho 19, 523 P.2d 1365 (1974). See also, *Wood v. Morris,* 87 Wash.2d 501, 554 P.2d 1032 (1976); *State v. Stenrud,* 113 Ariz. 327, 553 P.2d 1201 (1976); *In re Bye,* 12 Cal.3d 96, 115 Cal.Rptr. 382, 524 P.2d 854 (1974); *State Farm Mutual Ins. Co. v. Farmers Insurance Exchange,* 27 Utah 2d 166, 493 P.2d 1002 (1972); *Russell v. Blackwell,* 53 Haw. 274, 492 P.2d 953 (1972). In other words,

> "The determination of whether a rule is to be given retroactive application is generally made pursuant to a balancing process, wherein the gain to be achieved in the administration of justice by accomplishment of the purpose of the new rule (the first criterion) is balanced against the adverse effects on the administration of justice resulting from the extent to which the courts have mistakenly but in good faith relied on the prevailing rule (the second criterion) and from an application of the new rule for the purpose of reconsidering determinations already finally made pursuant to the then prevailing rule (the third criterion)." *People v.*

*McDaniel,* 16 Cal.3d 156, 127 Cal.Rptr. 467, 545 P.2d 843, 848 (1976).

Applying these principles, this court concludes that the trial court ruled correctly in applying the decision in *Lipe v. Javelin* prospectively. By not tolling the statute of limitations as to an out-of-state defendant subject to the long-arm statute, the *Lipe* decision works to encourage potential plaintiffs to diligently utilize long-arm provisions, and prevents claims from becoming more stale than necessary by penalizing plaintiffs who do not invoke long-arm procedures. No enhancement of this purpose is served by retroactive application, as the incentive of the *Lipe v. Javelin* holding cannot work after the fact. We are convinced that minimal number of cases will proceed to trial solely because of a prospective application of the *Lipe* doctrine, and thus the impact on the administration of justice will be slight. Of critical importance, we believe, is the reliance element. Prior to *Lipe,* the case of *Staten v. Weiss,* 78 Idaho 616, 308 P.2d 1021 (1957) strongly intimated, although did not expressly dictate, that the statute of limitations would be tolled as to an out-of-state defendant, even if that defendant was susceptible to service of process under the long-arm statute.[1] If *Lipe* is applied retroactively, plaintiffs who relied on the assumption that the statute of limitations defense could not be interposed against them, would lose their day in court because they relied on a reasonable interpretation of a pronouncement of this court. In the instant case, the plaintiffs contend they believed that the law did not require them to file suit within the time specified by the statute of limitations because of the dictates of *Staten.* We conclude that reliance on the prior holding was justified, and that retroactive application of the *Lipe v. Javelin* holding would work an injustice for those who so relied on the prior

---

1. The question presented in *Staten* was whether the statute of limitations was tolled while a defendant was subject to substituted service on the Secretary of State. Although not precisely on point, *Staten* was a sufficiently strong indicator to lead this court to comment in *Lipe* that

"Lipe argues that for the same reason the statute was tolled even though Javelin was subject to being personally served under the terms of the long arm statute. Lipe's argument is sound if *Staten* is of continued vitality."

case.[2] In weighing the three relevant considerations, we conclude that the holding in *Lipe v. Javelin* should be applied prospectively only.

Appellants contend that this court has previously upheld retroactive application of *Lipe* in *Blankenship v. Meyers,* 97 Idaho 356, 544 P.2d 314 (1975). We disagree. In that case, we did not pass upon the propriety of retroactive application, but rather decided the matter on alternate grounds.

Appellants also assign as error the trial court's refusal to allow an amendment to the answer to reflect a counter-claim for wrongful attachment. Amendments to the pleadings are governed by I.R.C.P. Rule 15(a):

> "Rule 15(a). Amended and supplemental pleadings—Amendments—A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty (20) days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires, and the court may make such order for the payment of costs as it deems proper. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within ten (10) days after

service of the amended pleading, whichever period may be the longer, unless the court otherwise orders."

As this case had been set for trial at the time of defendant's attempt to amend the answer, leave of the court was prerequisite to amendment. Although leave to amend is to be freely given, I.R.C.P. 15(a), the decision to grant or refuse permission to amend is left to the sound discretion of the trial court. *Markstaller v. Markstaller,* 80 Idaho 129, 326 P.2d 994 (1958); *Mercer v. Shearer,* 84 Idaho 536, 374 P.2d 716 (1962); *Andrus v. Irick,* 87 Idaho 471, 394 P.2d 304 (1964). In the circumstances which attend this case, we cannot say that the trial court abused its discretion in refusing to allow amendment to the answer to include an entirely new counter-claim on the day of trial. See, *Dairy Equipment Co. of Utah v. Boehme,* 92 Idaho 301, 304, 442 P.2d 437 (1968).

Affirmed. Costs to respondents.

DONALDSON and SHEPARD, JJ., and DUNLAP, District Judge, Retired, concur.

BISTLINE, Justice, dissenting.

Defendants' primary contention is that this Court's holding in *Lipe v. Javelin Tire Company, Inc.,* 96 Idaho 723, 536 P.2d 291 (1975), was neither a judicial repeal of nor an amendment to Idaho's tolling statute, I.C. § 5-229. Citing cases from Washington, Arizona, Montana, Nevada, Utah, Alaska, New Mexico, Oregon, Oklahoma, and the Fifth Circuit Court of Appeals,[1]

---

2. The court notes that this matter deals with attempts to enforce contract rights. In the context of contract rights, the element of reliance is particularly important, as the danger of impairing contract rights via retroactive changes in court holdings is especially acute: "We take the following from 21 C.J.S. Courts § 194, subsec. b, p. 329:

'An overruling decision cannot operate retrospectively so as to impair the obligations of contracts entered into, or injuriously affect vested rights acquired, in reliance on the overruled decision.' The same authority, at page 327, points out that a court of final review has the power to limit the effect of an overruling decision so that it will operate prospectively only. See to the same effect 14 Am.Jur.,

Courts, § 130, at page 345." *Linn County v. Rozelle,* 177 Or. 245, 162 P.2d 150, 165 (1945).

1. *Hawkinson Tire Co. v. Hawkinson,* 13 Ariz. App. 343, 476 P.2d 864 (1970), approved 107 Ariz. 255, 485 P.2d 825; *Summerrise v. Stephens,* 75 Wash.2d 808, 454 P.2d 224 (1969); *State ex rel. McGhee v. District Court of 16th Jud. Dist.,* 162 Mont. 31, 508 P.2d 130 (1973); *Bank of Nevada v. Friedman,* 82 Nev. 417, 420 P.2d 1 (1966); *Smith v. Forty Million, Inc.,* 64 Wash.2d 912, 395 P.2d 201 (1964); *Bethel v. Sturmer,* 3 Wash.App. 862, 479 P.2d 131 (1970); *Snyder v. Clune,* 15 Utah 2d 254, 390 P.2d 915 (1964); *Byrne v. Ogle,* 448 P.2d 716 (Alaska 1971); *Dedmon v. Falls Products Corp.,* 299 F.2d 173 (5th Cir. 1962); *Benally v. Pigman,* 78 N.M. 189, 429 P.2d 648 (1967);

defendants urge upon us that *no* appellate court in the western states has restricted a decision similar to our *Lipe* case to exclusively prospective application. What the Court does which I find most objectionable is amend *Lipe* to give it an element of prospectivity only and then apply that doctrine of prospectivity to the case now before us. No other court has gone to this extreme. Plaintiffs did not request such a holding. They urged only that the *Lipe* decision be applied on a case-by-case basis.

Retroactivity and prospectivity went entirely unmentioned in *Lipe* for the obvious reason that the consideration of such doctrine played no part in the determination of the case.[2] Were the contrary the case, Justice Bakes, who authored that opinion, would not have left the matter in doubt.[3]

I. The statutes which are relevant to this case are: I.C. § 5–216, the applicable statute of limitations; I.C. § 5–229, the tolling statute; and, I.C. § 5–514, the long-arm statute. Statutes of limitations in Idaho were first enacted in the Territorial Code of Civil Procedure of 1881. The tolling statute appears to have been enacted at the same time. Idaho's long-arm statute became effective March 11, 1961.

Prior to the adoption of the long-arm statute, *in personam* jurisdiction of the Idaho courts in civil matters began and ended at the State's boundaries. In 1933 the legislature enacted an out-of-state motorist statute which created a narrow exception to the general rule of civil *in personam* jurisdiction. This statute, as amended, is now I.C. § 49–1601 and § 49–1602. It provided for "substituted" service on a non-resident motorist through the fiction that by exercising the privilege of using Idaho's highways the motorist agreed that service upon the Secretary of State as his statutory agent rendered him subject to jurisdiction as though served in Idaho. Obviously, this statute dealt with only one facet of the field of tort law.

The passage of the long-arm statute changed the whole ball game. Personal jurisdiction no longer depends on service being made within Idaho's boundaries. The statute provides that an individual may be subjected to the jurisdiction of Idaho courts for a number of reasons including the commission of *any* tortious act within this state or the transaction of business in Idaho.

*Staten v. Weiss,* 78 Idaho 616, 308 P.2d 1021 (1957), involved the out-of-state motorist statute and the tolling statute. *Staten* was gratuitously overruled in *Lipe,* which was not a motor vehicle accident case and did not involve I.C. § 49–1601 and § 49–1602. The defendant in that case merely sought to convince the Court that the rationale of *Staten v. Weiss* should not be applied in *Lipe.* In accepting that defense argument, this Court said: "We now adopt what we believe to be the more reasonable interpretation of these statutes." However, the only statutes actually involved in *Lipe* were the long-arm statute and the tolling statute. Thus, overruling *Staten v. Weiss* was not essential to a determination of the case. Nor had the *Lipe* defendant sought the overruling of *Staten.*

---

*Kennedy v. Lynch,* 85 N.M. 479, 513 P.2d 1261 (1973); *Phillips v. Anchor Hocking Glass Co.,* 100 Ariz. 251, 413 P.2d 732 (1966); *Selby v. Karman,* 20 Ariz.App. 206, 511 P.2d 650 (1974), vacated 110 Ariz. 522, 521 P.2d 609 (1975); *Whittington v. Davis,* 221 Or. 209, 350 P.2d 913 (1960); *Jarchow v. Eder,* 433 P.2d 942 (Okl. 1967).

**2.** It is certainly true that the *Lipe* opinion did say that, "Lipe's argument is sound if *Staten* is of continued validity; however, for reasons hereinafter given, we believe *Staten* was improperly decided, overrule it and thus uphold the ruling of the district court." This simply conveys the thought that Lipe was without any argument other than *Staten.* The Court stripped Mr. Lipe of his *Staten* argument, and overruled it at the same time. This is not to say that *Staten* was controlling in the *Lipe* case. It clearly was not.

**3.** Justices Bakes joined in the majority opinion in *Thompson v. Hagan,* 96 Idaho 19, 523 P.2d 1365 (1974), wherein the Court demonstrated its understanding that retroactivity and prospectivity must be met *where there is a court decision overruling either a prior decision or voiding a statutory enactment*: "Since this action involves a major change in a host's liability in a negligently caused automobile accident, the question of its applicability to past, pending and future cases must be addressed." 96 Idaho at 24, 523 P.2d at 1370.

While the majority opinion in its discussion of prospectivity and retroactivity of decisions approvingly quotes generalities from the 1963 case from Washington, *State v. Martin,* it fails to discuss the later and more pertinent case of *Summerrise v. Stephens,* 75 Wash.2d 808, 454 P.2d 224 (1969). The Washington court did not consider its earlier non-resident motorist case as controlling in a case involving the interaction of the tolling statute and the long-arm statute.[4] It approved language in *Reed, Adm'r v. Rosenfield,* 115 Vt. 76, 51 A.2d 189 (1947) wherein the Vermont court observed that under the long-arm statute a non-resident defendant

". . . is by this statute made as amenable to service of process as he would be if residing in this state. It follows that [the tolling statute provisions] relating to absence from and non-residence in this state now have no application to cases such as the one at bar." 51 A.2d at 191.

All that this Court did in *Lipe* was to carry out the will of the legislature as evidenced by it in enacting the long-arm statute. Where the statute applies, the state boundaries cease to exist for the purposes of *in personam* jurisdiction. The Court did nothing more than declare the obvious. The Court made no law in the field. The change in law was made by the legislature in 1961.[5] It would have been incorrect for the Court in its 1975 *Lipe* decision to have concerned itself with the prospectivity or retroactivity of that decision and it is equally incorrect for it to do so now.

II. If this Court had once made a decision holding that the statutes of limitation were inapplicable to cases in which jurisdiction was obtained under the long-arm statute, and if *Lipe,* in turn, had overruled such a decision then, the Court in *Lipe* would necessarily have had to be concerned with the retroactivity or prospectivity of an overruling decision. Understandably, reliance would be very much in issue. However, such is not the case. Until *Lipe* there was not an Idaho decision one way or the other as to whether the tolling statute would apply to actions in Idaho where jurisdiction was based on the long-arm statute. Hence, what both I and the majority say about reliance is purely an academic discussion.

It may be true, as plaintiffs urge, that many attorneys (including defense counsel in this case) in Idaho have believed that this Court, when called up to do so, might likely apply the *Staten v. Weiss* rationale to the later-enacted long-arm statute. This, however, was pure supposition, and there was ample evidence to suggest that it might not come to pass. Initially there is simply the great dissimilarity between the long-arm statute and the motor vehicle substituted service statute. In addition, *Staten v. Weiss* was largely predicated on *Anthes v. Anthes,* 21 Idaho 305, 121 P. 553 (1912), the authority of which was highly questioned by the codifiers to the 1947 Idaho Code.[6]

---

**4.** "We have not quoted or discussed our own case of *Smith v. Forty Million, Inc.,* 64 Wash.2d 912, 395 P.2d 201 (1964) (discussed in both briefs), because we do not regard it as necessarily controlling." *Summerrise v. Stephens,* 75 Wash.2d 808, 454 P.2d 224, 227 (1969).

**5.** For a recent Utah case holding that the court doesn't make the law, but merely declares what the court believes to be the correct application of a legislative enactment, *see Prettyman v. Utah State Dept. of Finance,* 27 Utah 2d 333, 496 P.2d 89 (1972).

**6.** "In the case of *Anthes v. Anthes,* 21 Idaho 305, 121 P. 553, it was held to be immaterial that service could be had on the defendant in the state by means of leaving the same at his residence. This is contrary to the great weight of authority, and if the rule of *Anthes v. Anthes* is carried out to its logical conclusion, then the statute of limitations would never run in favor of a nonresident who came into the state and had an automobile accident, and service was obtained upon him by the means provided for service upon such nonresident. This is a generally recognized method of service of process on nonresident motor vehicle operators and obtains in Idaho, but the great weight of authority is that so long as service may be had by this substituted method, the statute of limitations will run. See 34 Am.Jur. 177, § 221; 34 Am.Jur. 179, § 223; *Arrowood v. McMinn County,* 173 Tenn. 562, 121 S.W.2d 566, 119 A.L.R. 855. The rule announced in *Anthes v. Anthes* has been followed in *Bode v. Flynn,* 213 Wis. 509, 252 N.W. 284, 94 A.L.R. 480." Annotation to § 5–229, Vol. 2, Idaho Code at 161.

Also in 1966, a United States district court in New York declined to apply *Staten v. Weiss* to Idaho's long-arm statute. *Fullmer v. Sloan's Sporting Goods Co., Inc.*, 277 F.Supp. 995 (1967). Beginning in 1969 this decision appears in the annotations to I.C. § 5–229. Plaintiff's counsel in *Lipe* used it to counter the argument that the rationale of *Staten v. Weiss* should be applied in the *Lipe* case.

Furthermore, I see nothing in the appeal record to justify the majority's assertion that the plaintiffs in this case relied on *Staten v. Weiss* as justification for their delay in bringing suit. Plaintiffs in their brief argued the reliance element. More than argument should be required.

"A point is made that the revision of the immunity rule should be prospective in its application. Such a contention would seem to be based on a concept of reliance. We find the suggestion without merit in the present case. It is doubtful that any defendant could justifiably rely on the rule after the expressions of dissatisfaction with the immunity concepts which appear in *Korff* [*Korff v. G. & G. Corp.*, 21 N.J. 558, 122 A.2d 889] and *Grober* [*Grober v. Kahn*, 76 N.J.Super. 252, 184 A.2d 161], supra. In any event there is nothing in the record to indicate that the defendant did place any actual reliance on the doctrine. Under such circumstances there is no reason for declining to apply the usual rule under which the overruling of a decision has retrospective effect. See *Dalton v. St. Luke's Catholic Church*, 27 N.J. 22, 26, 141 A.2d 273 (1958); *Arrow, Builders Supply Corp., v. Hudson Terrace Apts.*, 16 N.J. 47, 49, 106 A.2d 271 (1954)." *Wangler v. Harvey*, 41 N.J. 277, 196 A.2d 513, 518 (1963).

Reliance is better referred to as justifiable reliance, and is akin to the acquisition of vested rights. This brings me to my final point which is that neither plaintiff nor defendant is entitled to rely on the specific provisions of a statute of limitations or a tolling statute.

While the majority opinion cites various general authorities on the doctrine of retroactivity and prospectivity and implies that there are overtones of impairment of contract in a case such as this, it ignores the proposition of law that statutes of limitation are purely remedial and do not affect the creation or destruction of substantive rights.

"Statutes of limitations find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. [Citation omitted.] They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a 'fundamental' right or what used to be called a 'natural' right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.

"This Court, in *Campbell v. Holt* [115 U.S. 620, 6 S.Ct. 209, 29 L.Ed.2d 483], adopted as a working hypothesis, as a matter of constitutional law, the view that *statutes of limitation go to matters of remedy, not to destruction of fundamental rights.*" (Emphasis added.) *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945).

I disagree with the majority's suggestion that the statute of limitation, the long-arm statute, and the tolling statute are elements of the contract. Each of these has to do

with remedy. At all times the plaintiffs had the remedy of bringing their action in Idaho, and at all times the defendants have had their remedy of invoking the defense of the statute, of limitations. That these defendants were second in time to the defendants in *Lipe* should not in any way affect their right to invoke the statute.

*Staten* was decided before the passage of the long-arm statute. It dealt with a very narrow fact situation and with only the non-resident motorist statute. It should be obvious that the decision in *Staten* could in no way be construed as a controlling interpretation of a subsequently passed statute, especially where that statute constituted a revolutionary reform in the law of personal jurisdiction. That *Staten* needed to be overruled has no bearing on the problem of applying the correct interpretation of the long-arm statute, the statute of limitations, and the tolling statute to the parties in a suit in which the precise question arises.