**270 P.2d 420**

**BELL et al.  v.  CARLSON et al.**

**No. 7993.**

Supreme Court of Idaho.

May 5, 1954.

O. R. Baum, Hugh C. Maguire, Jr., and R. Max Whittier, Pocatello, for respondents.

Bistline & Bistline, Pocatello, for appellants.

PORTER, Chief Justice.

By this action, appellants seek to recover for damages to the automobile of appellant Bell resulting from a collision with an automobile driven by respondent, William Carlson, and owned by his father, respondent, Victor Carlson. By their complaint, appellants allege the collision was caused by the negligence of respondent, William Carlson, in the operation of the Carlson automobile. By their answer, respondents deny the allegations of the complaint and affirmatively allege that the damages were proximately contributed to and caused by the negligence of appellant Bell. The cause was tried to a jury which brought in a verdict for respondents. Appellants have appealed from the resulting judgment and from the order of the court overruling their motion for new trial.

Among other assignments of error, appellants urge the trial court erred in instructing the jury on the law of contributory negligence and in submitting such issue to the jury, on the ground that the evidence was insufficient to justify the court's action. To properly pass upon such assignment of error, it is necessary to consider the evidence in some detail.

There were only three witnesses who testified at the trial. Appellant Bell and L. D. Allred, the investigating officer, testified for appellants. Respondent, William Carlson, testified for respondents.

The collision occurred on May 16, 1949, at about the hour of noon in the City of Preston. In such city there is an intersection of two streets, to-wit: First North Street, running east and west, and First East Street, running north and south. The streets at such intersection are each 100 feet wide from property line to property line. The home of appellant Bell was located some three-quarters of a block east of such intersection. About noon on the day in question, Dr. Bell left his home and drove his 1937 Chevrolet automobile in a westerly direction along his right-hand side of First North Street. At the same time, William Carlson was driving the Carlson car south on First East Street. As to what happened at the intersection, Dr. Bell testified as follows:

"Q. And as you approached this intersection just tell the jury what happened. A. *A* I approached this intersection I was traveling at a low rate of speed, and as I got into the intersection I noticed the Carlson car, —it turned out to be,—approaching me at a fast rate of speed from the north. I made an attempt to stop. I did not have time to make any other maneuvers —my speed was too slow to get out of his way by advancing, and in fact I didn't have that much power. My speed was approximately right around fifteen miles per hour, or maybe just a little bit more, but very little, and I

didn't have time to back out of the way or anything else. The approaching car made no effort to avoid a collision, and I was struck approximately in the center of the intersection,—I mean from east and west. The other car was traveling near the center of the road, not in the west lane."

The car of Dr. Bell was struck on the right side on the right front fender. Dr. Bell heard respondent, William Carlson, tell the investigating officer that he was doing about 40 miles an hour.

Under cross-examination, Dr. Bell testified:

"Q. Now, you say you were going, —as I understand you to say, you were going about twenty miles an hour in the intersection? A. As I stated in my testimony it was around fifteen,—it might have been a little bit over that, but not much.

* * * * * *

"Q. Now, where was your car when you first saw the car being driven by Mr. Carlson? A. I was entering the intersection.

"Q. You were entering the intersection? A. That is right.

"Q. Now, how far in the intersection were you? A. Just a matter of feet. I do not know. I was in the intersection.

* * * * * *

"Q. Now did you look to the right before you entered the intersection? A. I did.

"Q. And could you see anything, —did you observe anything? A. You look to the right, then you look to the left, and you may look back, and by the time I looked back he was approaching there.

"Q. When you looked to the right could you see down the street? A. At that time there was a bit of shrubbery that obliterated the corner for a short distance, but by the time I reached the intersection and looked to the right the car was approaching.

* * * * * *

"Q. Now, how far was Mr. Carlson away from you when you first saw him? A. He was just about crossing the cross-walk, but not to the cross-walk yet."

The witness, L. D. Allred, testified that he was a patrolman on the police force at the time in question. That he was called and arrived at the scene of the accident a few minutes after it occurred. He there talked to respondent, William Carlson, who said the Carlson car was traveling probably 35 or 40 miles an hour. He testified:

"Q. Did you observe the northerly corner there on First East? That would be the corner to his right as he was approaching the intersection. A. Yes.

"Q. And what was the condition of that corner? A. There are trees on the corner, as I recall it. On my report there I see where I have checked 'No obstructions for either driver.' Now, it might have been there were limbs ha*ning* down from those trees that would have obstructed their views for only,—for just a flash. I don't believe it would have been enough, sufficient enough, to have actually blinded them from seeing.

"Q. To your observation then, a person going down First East,—First North Street, could see to the north on First East Street, if they had looked? A. Yes."

Respondent, William Carlson, called as a witness on behalf of respondents, testified he was sixteen years old at the time of the accident. That he had taken a friend home and was returning south on First East Street when the collision occurred. The gist of his testimony was as follows:

"Q. Now, do you know how fast you were going at the time you left your friend's house and went down to that intersection? A. No; I don't know how fast I was going.

"Q. Now, you have heard some testimony here that you were going forty miles an hour; that you made the statement you were going thirty-five or forty miles an hour. Now, what do you have to say with regard to that statement? A. Well, I didn't say how fast I was going. After the accident the officer and Doctor Bell came over to me and asked me approximately how fast I was going. They said about thirty or thirty-five, and I was,—and I said 'Yes, I did.' I was kind of shook up and didn't re*laize* what I was saying.

\* \* \* \* \* \*

"Q. (Mr. Maguire, continuing:) Now, as you approached the intersection did you see any cars coming from your left? A. No; I didn't.

"Q. When,—do you recall at this time looking over to the left? A. Well, it is a habit. I always do, but I don't recall whether I did or not.

"Q. Right now then you can't say for sure whether you did or not; is that right? A. No.

"Q. *When did you first see Doctor Bell's automobile? A. Well, not until I got out of Dad's car and looked around at first before I even noticed I hit him.*

"Q. *Did you see it before the collision? A. No.*

"Q. *When was the first time then that you knew there was another car in the intersection? A. After it was all over with. I got out and that is when I noticed it.*

\* \* \* \* \* \*

"Q. Did you make any observation; or do you have a recollection of hav-

ing made an observation as to the condition of the intersection to your left as you were proceeding south on First North Street? A. Well, there were a few trees there. The limbs were hanging down quite close to the ground, but it was just for,—you couldn't see for a distance back but as you got closer you could." (Emphasis supplied.)

From the evidence, the negligence of William Carlson is apparent; and such negligence was the proximate cause of the accident. Respondents do not seriously contend to the contrary. Respondents attempt to avoid liability for such negligence on the ground that Dr. Bell was guilty of contributory negligence which proximately contributed to the collision and to the damage of his car. The burden of proof of the affirmative defense of contributory negligence is upon the party pleading such defense, unless it appears from the evidence introduced by plaintiff. Section 5–816, I.C.; Bryant v. Hill, 45 Idaho 662, 264 P. 869; Kelly v. Troy Laundry Co., 46 Idaho 214, 267 P. 222; Tendoy v. West, 51 Idaho 679, 9 P.2d 1026; Willi v. Schaefer Hitchcock Co., 53 Idaho 367, 25 P.2d 167; Madron v. McCoy, 63 Idaho 703, 126 P.2d 566; Pearson v. City of Weiser, 69 Idaho 253, 206 P.2d 264.

Also, the burden of proof is upon the defendant to show that the negligence of plaintiff, if established, was a proximate contributing cause to the injury unless the proof on behalf of plaintiff establishes it or shows facts clearly presumptive of it. Kelly v. Troy Laundry Co., supra; Madron v. McCoy, supra; Tendoy v. West, supra; Pittman v. Sather, 68 Idaho 29, 188 P.2d 600; Pearson v. City of Weiser, supra; Baldwin v. Ewing, 69 Idaho 176, 204 P.2d 430.

The mere fact of a violation of a law of the road is not contributory negligence barring recovery unless such negligence constitutes a proximate contributing cause to the injury.

In Kelly v. Troy Laundry Co., supra [46 Idaho 214, 267 P. 225], the court was considering the absence of a light on the front of a bicycle and quoted with approval from George v. McManus, 27 Cal.App. 414, 150 P. 73, as follows:

" 'While the failure of a person to perform a duty imposed upon him by statute is sufficient evidence of negligence on his part, nevertheless such neglect, however illegal, in the absence of evidence showing it to have been the contributing cause of the injury, furnishes no legal ground for complaint.' "

In Tendoy v. West, supra, this court, in considering the absence of a taillight on a buggy in violation of statute, held that in the absence of some probable causal connection, bald negligence per se can raise no presumption of proximate cause and unless

such negligence contributes to the result, it is not contributory negligence.

In Maier v. Minidoka County Motor Co., 61 Idaho 642, 105 P.2d 1076, a bicycle was traveling on the highway at night without a lighted headlamp and this court held that in order for such negligence to bar recovery it was required to be a proximate and contributing cause of the injury.

Also, this court has held that the charge of contributory negligence must be sustained by substantial evidence in the record. Madron v. McCoy, supra.

■ Contributory negligence is generally a question of fact for the jury, but becomes a question of law for the court when established facts and circumstances permit only one possible conclusion to be drawn by a reasonably prudent man. In Dale v. Jaeger, 44 Idaho 576, at page 581, 258 P. 1081, at page 1082, this court said:

"Contributory negligence, being a defense to be pleaded and proved, is generally a question of fact, but when the established facts and circumstances permit only one possible conclusion to be drawn by a reasonably prudent man, it becomes a matter of law for the court's determination."

The affirmative defense of contributory negligence was pleaded in general terms and no specific act of negligence was set out. Respondents introduced no evidence of contributory negligence on the part of Dr. Bell. Respondents must therefore rely upon the evidence adduced by appellants to show negligence on the part of Dr. Bell which proximately contributed to the damage to his car in order to justify the court in giving instructions covering contributory negligence and in submitting such issue to the jury.

■ There is some suggestion in the brief of respondents that they contend it was contributory negligence on the part of Dr. Bell to fail to yield the right of way as the Carlson car was on his right. Under the undisputed evidence the automobile driven by Dr. Bell entered the intersection first and before the Carlson car approached it, and had the right of way. 136 A.L.R. 1497. In Cowan v. Market St. Ry. Co., 8 Cal.App.2d 642, 47 P.2d 752, on page 754, the court said:

"We had the same question before us in Keyes v. Hawley, 100 Cal.App. 53, 279 P. 674, and there held that the 'right of way' rules of the road only applied when two vehicles approached the point of intersection at approximately the same time so that, if both continued on at a lawful speed and in a prudent manner, a collision would occur. On page 60 of 100 Cal.App., 279 P. 674, 677, we said, ' * * * When one car has actually entered an intersection before the other approaches it, the driver of the first car may assume that he will be given the right of way and permitted to pass through

the intersection without danger of collision. He has the right to assume that the driver of the other car will obey the law, slow down, and yield the right of way if slowing down is necessary to prevent a collision. * * *' "

■ Furthermore, at the time of the accident, the Carlson car was admittedly traveling at an unlawful speed and under Section 49–520, I.C., in force at that time, its driver thereby forfeited any right of way he might otherwise have had. Stallinger v. Johnson, 65 Idaho 101, 139 P.2d 460.

■ The main contention, however, of respondents is that appellant Bell was traveling at an unlawful rate of speed which constituted negligence contributing to the injury. Section 49–504, I.C., in force at the time of the accident, provides that it is prima facie lawful to drive a vehicle at a speed not exceeding "Fifteen miles an hour when approaching within fifty feet and in traversing an intersection of highways when the driver's view is obstructed. A driver's view shall be deemed to be obstructed when at any time during the last fifty feet of his approach to such intersection, he does not have a clear and uninterrupted view of such intersection and of the traffic upon all of the highways entering such intersection for a distance of two hundred feet of such intersection; * *".

The evidence is not convincing that the view of Dr. Bell was obstructed as he approached the intersection within the meaning of the foregoing statute. In any event, the uncontradicted evidence of Dr. Bell both upon direct and cross-examination was that he was going 15 miles an hour. He admitted the possibility that he might have been traveling a trifle faster than 15 miles an hour. This testimony is far from substantial evidence that Dr. Bell was violating the speed law or traveling at a prima facie unlawful speed. Furthermore, if it be assumed that Dr. Bell was traveling a trifle over 15 miles an hour, there is nothing in the evidence from which it might be said that such trifling excess speed proximately caused or contributed to the injury.

Bearing in mind that the burden of proof was upon respondents to prove contributory negligence which proximately caused or contributed to the injury, we are unable to find in the record either direct or circumstantial evidence appearing in the proof offered by appellants or by respondents sufficient to establish contributory negligence on the part of Dr. Bell. We must conclude that the charge of contributory negligence is not sustained by substantial evidence in the record and that the trial court committed reversible error in instructing the jury on the law of contributory negligence and in submitting such issue to the jury for their consideration.

In view of the foregoing determination which will require the reversal of the judgment, we do not deem it necessary to consider or discuss the other assignments of

error set out by appellants as such assignments concern matters which are not likely to be issues upon a new trial.

The judgment of the trial court is reversed and the cause remanded with direction to grant a new trial. Costs to appellants.

TAYLOR, THOMAS and KEETON, JJ., concur.

GIVENS, J., concurs in the conclusion.