GREYHOUND CORPORATION,
Appellant,

v.

Howard SPARKS, Administrator,
Appellee.

No. 18037.

United States Court of Appeals
Fifth Circuit.

Oct. 3, 1960.

A. Longstreet Heiskell, Memphis, Tenn., Sam Lumpkin, Tupelo, Miss., Shepherd, Heiskell, Williams, Beal & Wall, Memphis, Tenn., Lumpkin, Holland & Ray, Tupelo, Miss., of counsel, for appellant.

Floyd W. Cunningham, Booneville, Miss., Cunningham & Cunningham, Booneville, Miss., of counsel, for appellee.

Before RIVES, Chief Judge, and JONES and WISDOM, Circuit Judges.

RIVES, Chief Judge.

At about 6:30 o'clock on Sunday evening, August 3, 1958, Johnny A. Sparks and his friend and kinsman, Charles Dickinson, were killed in an intersection collision between an automobile occupied by Sparks and Dickinson and a bus operated by appellant. The intersection is in a rural section of northwest Alabama. The bus was en route from Birmingham, Alabama, to Memphis, Tennessee, and was proceeding west over U. S. Highway

78.[1] The automobile was northbound on Alabama Highway 19. After a full opinion setting forth in detail its findings of fact and conclusions of law,[2] the district court entered judgment against the appellant for the wrongful death of Sparks in the amount of $20,000.00. We hold that the district court erred in arriving at the ultimate question of proximate cause through an erroneous process of legal reasoning or a misinterpretation of the legal significance of the evidentiary facts.[3]

Visibility at the intersection was thus described in the opinion of the district court:

"In the southeast quadrant formed by this intersection the ground was higher than the surface of the intersection and higher than the surface of either highway approaching the intersection. This high ground was topped by trees and undergrowth. As shown by the photographs introduced, some, of these trees, pine and oak, were more than 20 feet tall. At a point 50 feet South of the centerline of Highway 78 and on Highway 19 this ground was about 8.2 feet above the surface of the highway. At a point 50 feet East of the center-line (sic) of Highway 19 and on Highway 78, it was 7.2 feet above the roadway. This high ground and the growth thereon restricted seriously the visibility to the left, for a vehicle driver approaching on Highway 78 from the East, and to the right of such a driver, approaching from the South on Highway 19."

Negligence on the part of Dickinson, whom the district court found to be the driver of the automobile, was described in the opinion as follows:

"It is uncontradicted that the automobile failed to stop for the 'Stop' sign at the south entrance to this intersection. It laid down skid marks about 35 feet in length. These began just south of the 'Stop' sign and ended at the point of impact, about 2 feet north of the center-line (sic) of Highway 78. Its speed was variously fixed from 30 to 40 miles per hour to, as one witness said, 'terrific'. From the skid marks and testimony it seems clear that this automobile entered the intersection at a speed no less than 40 miles per hour. The driver of this automobile was negligent. But, there is no evidence which tends to show that Sparks, at any time, had knowledge of facts which were sufficient to charge him with the duty to anticipate that Dickinson would be reckless or negligent. Thus, the negligence of Dickinson cannot be imputed to Sparks. Johnson v. Battles, 255 Ala. 624, 52 So.2d 702; Hamilton v. Browning, 257 Ala. 72, 57 So.2d 530 and cases there cited."

The district court found that the driver of the bus was also negligent, and that his negligence was a concurring proximate cause of the death of Sparks, as follows:

"Clearly the bus was exceeding the posted speed of forty miles per hour. Thus the driver may have forfeited any right of way he had through this intersection. Brown v. Standard Casket Mfg. Co., 234 Ala. 512, 175 So. 358; § 18, Title 36, Code of Alabama, 1940. It is clear also

---

1. A "through highway," as defined in Code of Alabama, 1940, Tit. 36, Sec. 1 (48), 1955 Cum.Pocket Part:

"'Through Highway.' Every highway or portion thereof at the entrance to which vehicular traffic from intersecting highways is required by law to stop before entering or crossing the same and when stop signs are erected as provided in this title."

2. Reported in 173 F.Supp. 896, 898.

3. "Insofar * * * as the so-called 'ultimate fact' is simply the result reached by processes of legal reasoning from, or the interpretation of the legal significance of, the evidentiary facts, it is 'subject to review free of the restraining impact of the so-called "clearly erroneous" rule.'" Galena Oaks Corp. v. Scofield, 5 Cir., 1954, 218 F.2d 217, 219.

**46**

that this driver could not have had 'during the last fifty feet of his approach' to this intersection a 'clear and uninterrupted view' of traffic from the South upon Highway 19 'for a distance of two hundred feet from such intersection.' § 5, Title 36, Code of Alabama, 1940. This statute may have required a greatly reduced speed for the approach to and entrance into this intersection. But, even if the view to the left had been clear and the speed reduced, it would not have helped the driver since he was not looking to the left at all. He never saw the automobile. It is probable, if the driver had been exercising due care in looking to the south on Highway 19, that he could have safely turned the bus to the right onto the wide asphalt and gravel apron and thus avoid the collision. Common prudence, due care or reasonable care, whatever it is called, demanded, coming up out of defilade, approaching the intersection in an 'almost total blind spot', as he described it, that the bus driv-

er give warning of the approach of his vehicle. This he did not do, although he knew that this was a 'dangerous' intersection. Again, it appears probable that a prompt application of the brakes of the bus, if the driver had been reasonably alert, and if he had approached at a reasonably safe speed, would have sufficed to avoid this violent collision."

Assuming to be true all of the district court's findings of evidentiary fact, it affirmatively appears that the sole proximate cause of Sparks' death was the negligence of the driver of the automobile. Our reasons for that conclusion will be stated at length.

■ The speed limit both for the bus and for the automobile, while traveling along the respective highways prior to the immediate vicinity of the intersection, was sixty miles per hour.[4] At the intersection, the driver of the automobile was under a legal duty to stop and to yield the right of way to the bus.[5]

■ We do not agree with the district court that the driver of the bus may have

---

**4.** "§ 5(1). *Unlawful to exceed certain speeds.*—It shall be unlawful for any person to operate a motor vehicle on the highways of the state of Alabama at a speed greater than hereinafter provided.

"(a) No person shall operate a passenger vehicle, a pasenger bus or any motor truck having a box or express type body, of three-quarters of a ton capacity or less, commonly known as pick-ups or pick-up trucks, at a speed in excess of 60 miles per hour during the hours of daylight or 50 miles per hour during the hours of night. For the purpose of this section daylight shall be one-half hour before sunrise to one-half hour after sunset."
Code of Alabama 1940, Title 36, Sec. 5(1) (a), 1955 Cum. Pocket Part.

**5.** "(c) The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other

vehicles approaching the intersection on said through highway shall yield the right of way to the vehicle so proceeding into or across the through highway." Code of Alabama 1940, Tit. 36, Sec. 19 (c), 1955 Cum.Pocket Part.

"§ 21. *Vehicles must stop at certain through highways.*—The highway department with reference to the state highways and local authorities with reference to highways under their jurisdictions are hereby authorized to designate main traveled or through highways by erecting at the entrances thereto from intersecting highways, signs notifying drivers of vehicles to come to a full stop before entering or crossing such designated highways, and whenever any such signs have been so erected it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto. All such signs shall be illuminated at night or so placed as to be illuminated by the headlights of an approaching vehicle or by street lights. Any person who shall fail to stop in obedience to the notice given by such signs shall be guilty of a misdemeanor." Code of Alabama 1940, Tit. 36, Sec. 21, Cum.Pocket Part.

forfeited this right of way. The driver of a vehicle traveling at an unlawful speed forfeits any right of way which he might otherwise have as being the driver of the vehicle *on the right*,[6] but there is no similar provision for the forfeiture of the right of way possessed by the driver of a vehicle on a main traveled or through highway.

Again, we do not agree with the district court that Sec. 5, Tit. 36, Code of Alabama 1940,[7] may have required a greatly reduced speed for the bus in approaching and entering this intersection. We have been cited to and have found no case applying the pertinent part of that section to a through highway, before entering which drivers of vehicles are required to come to a full stop.[8] Instead, we think that the officials of the State of Alabama acted within their lawful authority in establishing a speed zone on U. S. Highway 78 for the approach and entry to this intersection of forty miles per hour and in so posting the highway.[9]

For a third time, we disagree with the district court on the law. In our opinion, the bus driver was *not* bound to sound his horn to give warning of the approach of his vehicle.[10] Those of us who have been so fortunate as to have lived thus far throughout the motor age have witnessed a marked reduction in the use of automobile horns. Section 6265 of the 1923 Code of Alabama was aptly described in Bradford v. Carson, 1931, 223 Ala. 594, 137 So. 426, 427, 429, as requiring "that upon approaching a curve or a corner in a highway where the operator's view is obstructed, he shall slow down and give a timely signal with his bell, horn, or other device for signalling." That section was superseded by Title 36, Sec. 17 of the 1940 Code of Alabama, which limits the statutory requirement for "a clearly audible signal by sounding the horn" to backing and to instances where a pedestrian may be affected by starting, stopping or turning. There is no existing statute requiring the bus

6. "§ 18. *Right of way.*—(a) When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right except as otherwise provided in section 16 of this title. The driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder." Id. § 18(a).

7. In pertinent part as follows: "* * * in any case when such speed would be unsafe it shall not be lawful * * *. Fifteen miles an hour when approaching within fifty feet and in traversing an intersection of highways when the driver's view is obstructed. A driver's view shall be deemed to be obstructed when at any time during the last fifty feet of his approach to such intersection, he does not have a clear and uninterrupted view to such approach to such intersection and of the traffic upon all of the highways entering such intersection for a distance of two hundred feet from such intersection." Id. § 5.

8. Id. §§ 19(c) and 21, quoted in footnote 5, supra.

9. "§ 58(3). *Establishment of state speed zones.*—Whenever the director of public safety and the highway director, with the approval of the governor, shall determine upon the basis of an engineering and traffic investigation that any prima facie speed permitted by law is greater or less than is reasonable or safe under the conditions found to exist at any intersection or other place or upon any part of a highway, said directors may determine and, with the approval of the governor, may declare a reasonable and safe prima facie speed limit thereat which shall be effective at all times or during hours of daylight or darkness or at such other times as may be determined when appropriate signs giving notice thereof are erected at such intersection or other place or part of the highway." Id. § 58(3); see also Title 36, Sec. 21, quoted in n. 5, supra.

10. "Common prudence, due care or reasonable care, whatever it is called, demanded, coming up out of defilade, approaching the intersection in an 'almost total blind spot,' as he described it, that the bus driver give warning of the approach of his vehicle." It should be noted that the law requires the horn to be audible for a distance of only 200 feet. See Code of Alabama 1940, Title 36, § 36(a).

driver to sound a horn on approaching this intersection. "In the absence of statute, the duty of sounding the horn is only a part of the broader duty of reasonable care, and there is no need to sound the horn, unless a reasonably careful and prudent person would have done so." 2 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.), Sec. 1041, p. 375.[11]

■ The driver of the bus was under no legal duty to anticipate that an automobile would violate the law and without stopping enter the main traveled or through highway on which the bus was traveling.[12] No such danger could be reasonably foreseen and, as a matter of law, common prudence did not require the bus driver to sound his horn.[13]

The three legal principles thus envisaged by the district court, if correct and applicable, would require all motorists on a through highway to slow down to fifteen miles per hour when approaching a blind intersection and to sound their horns. Motorists who do not happen to be familiar with local conditions cannot tell whether they are approaching a blind intersection until they are practically on it. Application of any such rules of the road would be impossible without unreasonably delaying traffic and causing a bedlam of noise. The rules thus assumed by the district court would, in practically every collision case at a blind intersection of a through highway, place the responsibility on the motorist who was proceeding on the through highway.

It seems to us that these erroneous conceptions of law obscured the thinking of the district court. When they are corrected, it becomes obvious, and capable of almost mathematical demonstration, that the sole proximate cause of the collision was the negligence of the driver of the automobile.

The right front portion of the automobile and the left front corner of the bus collided with tremendous force. The point of impact was just north of the center line of U. S. Highway 78 and east of the center of Alabama Highway 19. For vehicles proceeding west on U. S. 78 and north on Alabama 19, the meeting place of the two roads is a blind intersection. As appears from the district court's description of the southeast quadrant formed by the intersection, which has been quoted, the terrain in the area is such that only during the last fifty feet of the approach to the intersection on either highway could the driver of one vehicle possibly see the other.

The district court found that the automobile failed to stop for the "Stop" sign at the south entrance to this intersection. The court also found that the automobile entered the intersection at "a speed no less than 40 miles per hour" (nearly 60 feet per second). Thus, had the bus driver been totally alert and observed the car the instant it became visible, he would have seen it for a maximum time of five-sixths of a second before the collision. Even then, until some time elapsed in which the bus driver could estimate the speed of the automobile, he could assume that it would stop before entering the through highway. A fraction of a second additional time would be required for what the bus driver per-

11. To like effect, see Francis v. Imperial Sanitary Laundry & Dry Cleaning Co., 1941, 241 Ala. 327, 2 So.2d 388, 391; 60 C.J.S. Motor Vehicles § 288.

12. See 2 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.), § 1026.

13. The district court characterizes this intersection as dangerous, but that is so only upon the assumption that the law would be violated. There was no dispute as to the following facts testified to by Civil Engineer George B. Pilkington:
"Q. If a car proceeded to stop at that location, what would be the visibility to the west? A. It would be excellent.
"Q. How about the highway, would it be on a level or down grade or up-grade or what? A. Well, you would have an up grade closer to the intersection.
"Q. How about the visibility toward the east? A. That is good also, if you stop at this stop sign."

ceived with his eyes to be translated into a motor response.[14] Before that time elapsed, the collision would have occurred.

Hence, if the bus driver had been traveling at the legal rate of speed (40 m. p. h.) and on an alert lookout, he could neither have stopped his vehicle nor otherwise have avoided the collision. Clearly, then, the admitted negligence of the driver of the automobile was the sole proximate cause of the death of Johnny Sparks.

The judgment is therefore reversed and the cause remanded with directions to enter judgment for the defendant.

Reversed with directions.

14. "The normal driver's reaction time is assumed to be three-fourths of a second." Man and the Motor Car (Prentice-Hall, 1954); see also, 9C Blashfield, Cyclopedia of Automobile Law and Practice, §§ 6023, 6237.