460 P.2d 388

Ana Leigh STUCKI, Lasca Lynne Stucki, Marina Kay Stucki, J. Wesley Stucki, J. Rodney Stucki, and J. Douglas Stucki, each minors who sue by their Guardian Ad Litem, J. Wendell Stucki, Plaintiffs-Appellants,

v.

Carrie LOVELAND, a single woman, V-1 Oil Co., a corporation, and Richard Hahn, Defendants-Respondents.

No. 10412.

Supreme Court of Idaho.

Oct. 24, 1969.

Rigby & Thatcher, Rexburg, for appellants.

Racine, Huntley, Herzog & Olson, Pocatello, for respondents V-1 Oil Co. and Richard Hahn.

McFADDEN, Chief Justice.

This action was instituted by the guardian ad litem of six minor children seeking damages for the death of their mother, Mary Ann Stucki, who died in an automobile accident which occurred January 3, 1968. The plaintiffs' (appellants) complaint was against Carrie Loveland, who was alleged to be the driver of a 1962 Cadillac automobile owned by her, and against Richard Hahn, the driver of a 1965 Ford propane gas delivery truck owned by the V-1 Oil Company, which truck collided with the Loveland Cadillac at the intersection of St. Leon Road and Ucon West Road in Bonneville County.

Without answering the complaint the respondents Hahn and V-1 Oil Company moved for summary judgment. The trial court granted this motion and entered summary judgment dismissing the complaint against the respondents Hahn and V-1 Oil Company. This appeal was perfected, asserting that the trial court erred in granting the summary judgment. The complaint as against defendant Loveland is still pending and she is not a party to this appeal.

In their complaint appellants allege that Hahn, as the agent of respondent oil company, was driving the 1965 Ford gas delivery truck westerly on Ucon West Road; that defendant Carrie Loveland was driving her 1962 Cadillac northerly on St. Leon Road; that these two roads intersected; and that Hahn drove his truck negligently, causing it to collide with the Loveland car, resulting in the death of

Mary Ann Stucki, the mother of the minor appellants. The complaint charged defendant Carrie Loveland with gross negligence, and charged respondent Hahn with negligence in the operation of the truck which is imputed to his employer. Special and general damages were sought.

In passing on respondents' motion for summary judgment the trial court had before it answers supplied by Hahn to appellants' interrogatories, answers to interrogatories submitted by respondent to appellant guardian ad litem, the deposition of Carrie Loveland, and other affidavits and certificates, including the affidavit of the investigating police officer and photographs taken by him.

The basic reason the summary judgment was granted, as explained by the trial court in its memorandum opinion, was that there was no showing of negligence on the part of Hahn in driving his truck.

Facts which are undisputed from the record disclose that Mrs. Stucki and her friend and co-employee, defendant Carrie Loveland, were riding in Mrs. Loveland's 1962 Cadillac, a few minutes prior to 7:40 a. m. on January 3, 1968, on their way to work at the Idaho Fresh-Pak Plant at Menan.[1] The Loveland car was proceeding northerly on St. Leon Road. At the same time, respondent Hahn was driving westerly on Ucon West Road, which has a posted speed limit of 50 m. p. h. At the time of the accident the roads in the area were snow covered and slick. There was a stop sign on St. Leon Road prohibiting traffic on St. Leon Road from entering the intersection of that road with Ucon West Road without first stopping. I.C. § 49–751. There was no stop sign on Ucon West Road. The Loveland Cadillac went through the stop sign onto Ucon West Road without stopping and was hit in the right rear portion of the car by the 14,000 pound Ford propane gas delivery truck driven by Hahn. Following the collision the Cadillac continued northwesterly through the intersection, into the west barrow pit, sheared off a stop sign, tore down several fence posts and collided with a large piece of concrete, stopping 80 feet from the point of impact. The right front door, which had been damaged in a previous accident, was torn from the car, and the decedent's body was thrown from the car. She was killed instantly and her body was lying near the right side of the Cadillac after the vehicle stopped.

After the collision the truck continued west and traveled about 100 feet along the northern barrow pit along Ucon West Road, before returning to the highway where it stopped approximately 190 feet from the point of impact.

The intersection of Ucon West Road and St. Leon Road is an obstructed or partially blind intersection. Westbound traffic on Ucon West Road can observe the northbound traffic on St. Leon Road from approximately one-half mile before the intersection until a few hundred yards before the intersection, at which point barns, corrals and a house obscure the view. The view is then again clear when westbound traffic on Ucon West Road is between 100 and 200 feet of the intersection.

Respondent Hahn in his answer to interrogatories stated that the nearest point he could observe the Loveland vehicle was when he was approximately 100 to 130 feet from the intersection and that farm houses obstructed the vision for both vehicles as they approached the intersection. He stated that he was traveling about 40 miles an hour when he first observed the Loveland vehicle, then about 100 feet from the inter-

---

1. There is a serious issue of fact as to whether Mrs. Loveland or Mrs. Stucki was driving the Cadillac at the time of the accident, and that dispute in the evidence is a primary issue remaining in the appellants' complaint against Mrs. Loveland. For the purpose of this opinion only, it will be assumed that Mrs. Loveland was the operator of the vehicle; because if we assume Mrs. Stucki was driving, appellants could not recover because of her contributory negligence as a matter of law in going through the stop sign. See infra.

section. He also stated that he had been traveling west on Ucon West Road and that shortly before coming to the intersection he had slowed down to meet an oncoming truck, and then continued to slow down. He estimated the speed of the Loveland vehicle at about 50 miles per hour when he first saw it and stated that there was no indication that it was attempting to slow down or stop at the stop sign. He stated that he attempted to avoid any collision by turning to the south and applying his brakes, hoping the other car would pass ahead of him, but that the truck collided with the right rear of the Loveland vehicle.

There was no other eye witness to the collision itself. Mrs. Loveland testified she remembered nothing at the scene of the accident and didn't remember anything until after she was in the hospital. She testified that Mrs. Stucki was driving the car and that she (Mrs. Loveland) was putting her stockings on at the time of the accident and could give no details as to how the accident happened.

Appellants urge that the trial court erred in determining that there is no genuine issue of fact. It is their contention that an issue of fact is presented as to the speed of the respondent's truck and that under the circumstances the speed of the truck would constitute negligence. They argue there is substantial evidence Hahn was driving faster than 40 miles per hour, the speed he testified he was traveling, and, indeed, perhaps even faster than the fifty mile per hour speed limit. The trial court had before it the statement by Hahn that he was driving slightly less than 40 miles per hour as he approached the intersection and the circumstantial evidence of the condition of the vehicles after the crash and the distances they traveled.

■ The appellants are correct in their contention that circumstantial evidence— such as damage to an automobile and the distance traveled after impact—can be used to establish the speed of a motor vehicle. See Youngs v. Fort, 252 Iowa 939, 109 N.W.2d 230 (1961); Dahling v. Dammann, 251 Minn. 171, 87 N.W.2d 25 (1957); Johnson v. Ohman, 10 Wash.2d 466, 117 P.2d 217 (1941); Greenslitt v. Three Bros. Baking Co., 170 Or. 345, 133 P.2d 597 (1943). The basic question, however, is whether this circumstantial evidence is sufficient, when contrasted with Hahn's testimony as to his speed, to raise a *genuine* issue of material fact as to whether Hahn was driving faster than 40 miles per hour.

■ In Petricevich v. Salmon River Canal Co., 92 Idaho 865, 452 P.2d 362 (1969), this court held that circumstantial evidence might be sufficient to refute direct testimony and raise a genuine issue of material fact. It is also noted in that case, however, that the circumstantial evidence must be sufficient to raise more than a "slight doubt" as to the facts. Therein this court stated:

" * * * the better rule is that summary judgment will be granted whenever on the basis of the evidence before the court a directed verdict would be warranted or whenever reasonable men could not disagree as to the facts." 92 Idaho at 871, 452 P.2d at 368.

To the same effect: Gifford v. Travelers Protective Ass'n of America, 153 F.2d 209 (9th Cir. 1946); Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944).

■ In the present case it is our opinion that the circumstantial evidence offered by the appellants fails to raise an issue of fact. Appellants point to the extensive damage to the Loveland vehicle and the fact that the truck traveled almost 200 feet after impact, asserting that these facts establish a greater speed for the truck than that testified to by Hahn. Of necessity, except at minimal speeds, a truck with a gross weight of 14,000 pounds striking a passenger car, is going to do extensive damage. Moreover, any inference of excessive speed which the damage to the passenger vehicle might otherwise afford is destroyed by the fact

that the Cadillac also collided with a stop sign, several fence posts and a large piece of concrete. Appellants' attempt to establish the speed of the truck from the condition of the passenger vehicle and the distance traveled by the truck following the collision, so as to create a genuine issue of fact concerning the speed of the truck, falls short of the mark. I.R.C.P. 56 (e) requires that a person opposing the motion for summary judgment " * * * may not rest upon mere allegations or denials of his pleading, but must answer in detail as specific as that of the moving papers, setting forth the material facts as he believes and intends to prove them to be. If he does not so answer under oath, summary judgment shall be entered against him." Appellants have failed to answer Hahn's sworn statement as to his speed.

Appellants additionally contend that even if Hahn was traveling only 40 miles per hour under the existing road conditions the reasonableness of such speed presented an issue of fact for resolution by the jury by reason of the provisions of I.C. § 49–701.[2] There might be more merit to this contention if the intersection involved in this case was not one where the road on which the Cadillac was traveling was controlled by a "stop" sign. I.C. § 49–751(d)[3] places the duty upon the driver of the vehicle approaching the stop sign to stop before entering the controlled intersection. Other vehicles approaching such a controlled intersection are entitled to rely upon the mandatory provisions of that statute. Foster v. Thomas, 85 Idaho

565, 382 P.2d 792 (1963); Salcido v. Bates, 436 S.W.2d 934 (Tex.Civ.App.1968); Godwin v. LaTurco, 77 Cal.Rptr. 305 (Cal. App.1969); Barwood, Inc. v. Georgi, 253 Md. 29, 251 A.2d 596 (1969); Gates v. Green, 214 So.2d 828 (Miss.1968); Annot. 3 A.L.R.3d 180, at § 7, p. 255. It is the duty of the driver approaching the stop sign to come to a halt and determine if it is safe to proceed across the highway; it is not the duty of the driver of the vehicle on the sign-protected through highway to assume drivers will violate such a mandatory statutory duty. Foster v. Thomas, supra; Coughran v. Hickox, 82 Idaho 18, 348 P.2d 724 (1960).

In this case where there was a direct violation of the mandatory provisions of the statute and no explanation or justification offered for such violation, the proximate cause of the accident could not be attributed to anything other than the failure of the driver of the Loveland vehicle to stop at the stop sign before proceeding through the intersection. See Greyhound Corp. v. Sparks, 283 F.2d 44 (5th Cir. 1960); Davis v. Brooks Transp. Co., 186 F.Supp. 366 (D.C.Del.1960); Sun Cab Co. v. Cusick, 209 Md. 354, 121 A.2d 188 (1956); Annot. 3 A.L.R.3d 180 at §§ 47– 48, pp. 450–461. It is our conclusion that there were no actions on the part of respondent Hahn that could be considered as a proximate cause of the accident.

The summary judgment of the trial court is affirmed. Costs to respondents.

McQUADE, DONALDSON and SHEPARD, JJ., and SCOGGIN, D. J., concur.

2. "(a) No person shall drive a vehicle on a highway at a speed greater than is reasable and prudent under the conditions and having regard to the actual and potential hazards then existing.
    *       *       *       *       *
    (c) The driver of every vehicle shall, consistent with the requirements of paragraph (a), drive at an appropriate reduced speed when approaching and crossing an intersection * * * and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions."

3. "(d) Except when directed to proceed by a police officer or traffic-control signal, every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the crosswalk on the nearside of the intersection or in the event there is no crosswalk shall stop at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection."