496 P.2d 97

Rodney Derryl DAWSON et al., Plaintiffs-Appellants,

v.

Ronald T. OLSON and Department of Highways, State of Idaho, Defendants-Respondents,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Intervenor-Respondent.

No. 10865.

Supreme Court of Idaho.
March 8, 1972.
Rehearing Denied May 8, 1972.

Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for plaintiffs-appellants.

Elam, Burke, Jeppesen, Evans & Boyd, Boise, for respondent State Farm Mutual Automobile Insurance Co.

Kent B. Power, Boise, for respondent Ronald T. Olson.

W. Anthony Park, Atty. Gen., and Faber F. Tway, Boise, for respondent Dept. of Highways.

McQUADE, Chief Justice.

This is an action for wrongful death which arose from a traffic accident the evening of January 12, 1968. All roads were bare and dry at the eastern edge of Caldwell, where Interstate Highway 80 passes beneath an overpass bearing traffic on Franklin Road. A pickup truck driven by Hazel G. Dawson, accompanied by her husband, Nathaniel C. Dawson, turned from the Interstate and stopped behind a semi-trailer truck parked on the exit ramp leading to an intersection with Franklin

Road. Behind their pickup truck another car approached. When the semi-trailer truck began again to move, the three vehicles proceeded up the remainder of the ramp toward the intersection.

At the same time, one mile east on Franklin Road, a westbound driver was approached by a 1956 Mercury from the rear and passed at an apparent speed of ninety miles per hour. The Mercury proceeded toward the point where Franklin passes over Interstate 80.

At the intersection, the semi-trailer truck stopped again in compliance with a stop sign. There was a stop line twenty feet beyond at the edge of the intersection, and a traffic signal flashing red to ramp traffic and amber to vehicles traversing Franklin Road. As he slowed, the truck driver from his vantage point in the cab could see, beyond the crest of the overpass to his left, the lights of the Mercury approaching on Franklin Road. When he entered the intersection and turned left on Franklin Road, the trailing vehicles, which had stopped behind him, began to ease forward.

The driver of the last vehicle saw the pickup ahead of him proceed slowly toward the intersection without stopping at the stop sign or stop line. He noticed that the steel guard rails along Franklin Road reflected light from the oncoming Mercury's headlights, while that car was still hidden behind the crest of the overpass. The driver of the semi-trailer truck had completed his turn and was on Franklin Road crossing the overpass. At that time the Mercury passed in the opposite direction at an estimated speed of 55 to 60 miles per hour. Glancing into his rear-view mirror, the truck driver observed the pickup roll into the intersection, and witnessed a flaming collision which took four lives.

The police investigation established that the impact, which was not preceded by skid marks of the Mercury, occurred in the westbound lane of Franklin Road. The Dawsons were killed when their pickup was struck broadside. Two occupants of the Mercury died in the fire which engulfed that car. Only its driver, Ronald T. Olson, an uninsured motorist, survived the accident. Subsequent alterations to the overpass and interchange provided the occasion for some disagreement concerning the speed limit in force at the time of the accident. An engineer who examined the Department of Highways' records testified that those records showed the overpass posted at 35 miles per hour. One of the Dawsons' sons said he saw the signs the night of the accident. A photograph taken one week after the accident showed one such sign facing eastbound traffic. However, Olson's mother testified that she drove Franklin Road the day following the accident, and saw no such signs. She claimed they were installed later. Absent the 35 miles per hour signs, the applicable speed limit would have been 50 miles per hour.

On September 17, 1968, the Dawson heirs brought a wrongful death action against Olson. State Farm Mutual Automobile Insurance Company petitioned to intervene because, as the Dawsons' insurer under a policy containing uninsured motorist coverage, it had a vital interest in the determination of Olson's liability, if any. The parties stipulated that State Farm could intervene, and the petitition was granted. After the case was set for trial, this Court issued its opinion in Smith v. State,[1] prospectively abolishing sovereign immunity as a defense to actions based on tortious conduct of the State or a political subdivision acting in a proprietary capacity. Plaintiffs subsequently were permitted to amend their complaint, adding the Department of Highways, State of Idaho, as a party defendant, and alleging that negligent design of the overpass and roadways created a dangerous impairment of visibility which proximately caused the fatal accident. However, when trial began on Octo-

1. 93 Idaho 795, 473 P.2d 937 (1970).

ber 5, 1970, the court granted summary judgment in favor of the Department, apparently on grounds that the ruling in *Smith* had not yet become law.[2]

Motions by defendant and by the intervenor for involuntary dismissal under I.R. C.P. 41(b) or directed verdict under Rule 50(a), at the close of plaintiffs' case and at the close of all evidence, were denied. The jury returned a verdict for plaintiffs, awarding them $75,000. Defendant and intervenor moved for judgment n.o.v. or new trial under Rule 50(b), while plaintiffs' counsel moved to compel the intervenor to pay attorney fees. On November 27, 1970, the court granted judgment n.o.v. and denied the motion for attorney fees.

■ When this Court gave prospective effect to the holding in Smith v. State, we departed from the traditional view that at all times overruling decisions "discover" the "true" law and take retroactive effect because prior decisions lose their force.[3] Utilizing the power to establish prospective policy, upheld by Justice Cardozo in Great Northern Ry. Co. v. Sunburst Oil & Refining Co.,[4] we nevertheless applied our holding to the litigants then at bar in order to balance against the reliance interest of the State in the sovereign immunity defense[5] the plaintiffs' legitimate interest in compensation after undertaking the effort and expense of bringing the issue before us.[6] Appellants in the present case argue that their action was pending below when *Smith* was decided, situating them similarly to the *Smith* plaintiffs and requiring that they be accorded the same treatment. However, we believe, with Chief Justice Schaefer of Illinois, that "the person who successfully challenges existing legal doctrine can be, and has been, regarded as

2. The *Smith* holding was framed to take effect sixty days after adjournment of the First Regular Session of the Forty-First Idaho Legislature unless legislative action on sovereign immunity were taken in that session. On March 20, 1971, the Idaho Tort Claims Act became law. I.C. § 6–901 et seq.

3. *See, e. g.* Blackstone, Commentaries on the Laws of England, Vol. I, § 83, pp. 116–120 (Jones ed., 1915).

4. 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932). Cardozo's language removed from constitutional concern the issues relating to prospective application of overruling decisions. Those issues subsequently have become questions of "judicial policy rather than of judicial power." *See generally*, Annotation, Prospective or Rettroactive Application of Overruling Decision, 10 A.L.R.3d 1371, 1378.

5. Failure of the Department of Highways to procure liability insurance until *Smith* was decided evidenced its actual reliance on the doctrine. The degrees of vigor with which accidents were investigated or of the care with which evidence was preserved may also have reflected reliance on immunity to suit. Cf. Spanel v. Mounts View School Dist. No. 621, 264 Minn. 279, 118 N.W.2d 795, 804 (Minn. 1962).

6. We recognize that in many instances it may be unnecessary to reward the successful litigant to provide an incentive to appeal application of an existing but discredited doctrine. Even if an overruling decision were entirely prospective in effect, "[s]ufficient incentive would remain, however, to those litigants who conduct a business in which the question to be decided is likely to arise again in the future. And a chance for a favorable decision on appeal would exist wherever there was a possibility of convincing the appellate court that the facts in the particular case did not merit prospective application of the decision." Note, Prospective Operation of Decisions Holding Statutes Unconstitutional or Overruling Prior Decisions, 60 Harv.L. Rev. 437, 440 (1947). In the torts area, the likelihood that an injured party will undertake extended and costly litigation without hope of compensation, simply to establish a new doctrine, is slight unless the injury is recurring in nature. *Smith* arose from a single incident, an automobile accident on a bridge maintained by the Department of Highways. Only by applying the decision to the plaintiffs at bar could their legitimate interest in compensation, after trying and appealing the issue, have been satisfied.

having thereby set himself apart."[7] In a somewhat different context, Professor David Currie has noted that:

"[This] argument may be a bit intellectually untidy, but it may offer the best alternative to judicial paralysis on the one hand, and wholesome frustration of legitimate expectations on the other."[8]

The practice of overruling prospectively except as to the litigants then at bar has been adopted in sovereign immunity cases by the courts of Illinois[9] and Wisconsin.[10] We follow that course in this appeal, not out of insensitivity to the plaintiffs' tragic loss, but because a line must be drawn somewhere, and the public body here involved legitimately relied on the existing state of the law. Absent the special consideration which may extend to a plaintiff who pioneers a successful reform in the law, that reliance interest will be protected.

The general issue of contributory negligence in this case turns on more narrow questions of negligence per se and proximate cause. When a motor vehicle statute provides that under specified circumstances certain acts shall or shall not be done, for protection of other motorists, it fixes a standard of conduct from which it is negligence per se to deviate without justifiable excuse.[11] However, violation of a statute does not bar recovery due to contributory negligence unless it was a proximate cause of the injury.[12]

It appears that Mrs. Dawson was negligent per se in failing to stop as required by statute,[13] and it may be contended that she was also negligent per se in violating the closely related statutory duty to yield the right of way.[14] Appellants admit negligence in failing to stop, but argue that it did not proximately cause the accident. They also admit failure to yield, which necessarily was a proximate cause, but offer an explanation to show that it was not a violation of the applicable statute. Before reviewing these arguments we acknowledge at the outset that we are entering the province of the jury and may not uphold the judgment n.o.v. unless the facts are undisputed and permit only one reasonable conclusion to be reached after all inferences are drawn in favor of appellants.[15]

Appellants argue that Mrs. Dawson's ability to see down Franklin Road was limited to 475 feet by the design of the overpass, while Olson was approaching at a velocity somewhere between 55 to 60 miles per hour (81 to 88 feet per second) and 90 miles per hour (132 feet per second). Though she may have seen the reflections of headlights on the guard railings when Olson was farther away, she could not have gauged from them his distance or speed. From these facts appellants conclude, first, that even had Mrs.

---

7. Schaefer, The Control of "Sunbursts": Techniques of Prospective Overruling, 24th Annual Benjamin N. Cardozo Lecture, 1967, reprinted in 42 N.Y.U.L.Rev. 631, 638 (1967).

8. Currie, Suitcase Divorce in the Conflicts of Laws, 34 U.Chi.L.Rev. 26, 62 (1966).

9. Molitor v. Kaneland Community Unit Dist. No. 302, 18 Ill.2d 11, 163 N.E.2d 89 (1959), cert. denied, 362 U.S. 968, 80 S.Ct. 955, 4 L.Ed.2d 900 (1959).

10. Holytz v. City of Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618 (1962).

11. See, e. g., Rosenberg v. Toetly, 93 Idaho 135, 456 P.2d 779 (1969); Riley v. Larson, 91 Idaho 831, 432 P.2d 775 (1967); Bale v. Perryman, 85 Idaho 435, 380 P.2d 501 (1963).

12. Bell v. Carlson, 75 Idaho 193, 198, 270 P.2d 420 (1954).

13. See I.C. § 49–751(d).

14. See I.C. § 49–729.

15. E. g., Loosli v. Bollinger, 90 Idaho 464, 413 P.2d 684 (1966); Otts v. Brough, 90 Idaho 124, 409 P.2d 95 (1965).

Dawson stopped completely she would have continued into the intersection. Since any stop from idling speed would have been momentary, the pickup would still have advanced far enough to obstruct Olson's lane at the critical moment. Consequently, failure to stop did not proximately cause the accident. Secondly, failure to yield was not a violation of statutory duty because the combination of restricted visibility and Olson's high speed prevented Mrs. Dawson from apprehending the immediate hazard posed by the approaching car. I.C. § 49–729(b), upon which the jury was properly instructed, expresses the duty to yield in terms of immediate hazard:

> "Except when directed to proceed by a police officer or traffic control signal, every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop as required by section 49–751 and after having stopped shall yield the right of way to any vehicle which has entered the intersection from another roadway or which is *approaching so closely on said roadway as to constitute an immediate hazard*, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection shall yield the right of way to the vehicle so proceeding." (Emphasis supplied).

Reasonable men may evaluate these arguments differently. The factual problems created by Olson's excessive speed and Mrs. Dawson's limited range of vision do not lend themselves facilely to a single, reasonable conclusion. The conflict of reasonable views precludes us from joining the trial court in substituting our analysis for that of the jury. When all inferences are drawn in favor of appellants, the verdict is sufficiently supported by substantial evidence that it should not be set aside.[16] The order granting judgment n.o.v. must be vacated. Because the record does not reveal a conditional ruling on the alternative motion for new trial, as required by Rule 50(c), the district court shall, upon remand, hear argument and rule on the motion.

█ Appellants have challenged the trial court's denial of a motion to compel payment of their attorney fees by the intervenor, State Farm Mutual, under I.C. § 41–1839.[17] That statute has been construed to apply to claims under uninsured motorist coverage,[18] but its scope of application recently was limited in Carter v. Cascade Insurance Co.[19] In *Carter* this Court established two rules: (1) In general, no amount is "justly due" from the insurer until facts substantially indicative of the uninsured motorist's liability are shown the insurer, or, in the absence of such facts, until the uninsured motorist's liability is admitted or judicially declared. (2) Where the insurer is sued for attorney fees incurred in a *separate* successful action against the uninsured motorist, the insurer is obligated to pay the attorney fees only if its initial refusal to pay the claim were unreasonable.

█ In the present case, it appears from the first rule that no amount could be

---

16. I.C. § 13–219 provides, "that whenever there is substantial evidence to support a verdict the same shall not be set aside."

17. "Any insurer issuing any policy, certificate or contract of insurance, surety, guaranty or indemnity of any kind or nature whatsoever, which shall fail for a period of thirty (30) days after proof of loss has been furnished as provided in such policy, certificate or contract, to pay to the person entitled thereto the amount *justly due* under such policy, certificate or contract,

shall in any action thereafter brought against the insurer in any court in this state for recovery under the terms of the policy, certificate or contract, pay such *further* amount as the court shall adjudge reasonable as attorney's fees in such action." (Emphasis supplied).

18. Halliday v. Farmers Insurance Exchange, 89 Idaho 293, 404 P.2d 634 (1965).

19. 92 Idaho 136, 438 P.2d 566 (1968).

"justly due" unless or until the district court otherwise enters judgment for appellants. The motion for new trial is pending, and no allowance of attorney fees as compensation may be made prior to final judgment. The statute does not compel, nor does *Carter* require, the "further" payment of attorney fees if the appellants' action fails. The second rule requires no further discussion because it does not govern a single action against the insurer and uninsured motorist.

The order granting summary judgment below is affirmed; but the order granting judgment n.o.v. is vacated. Cause is remanded for further proceedings consistent with this opinion. Costs to respondent Department of Highways and to appellants.

DONALDSON and SHEPARD, JJ., concur.

McFADDEN, Justice, joined by SCOGGIN, District Judge (concurring in part and dissenting in part).

I concur in that portion of the majority opinion which sustains the summary judgment granted in favor of the defendant Department of Highways, State of Idaho. However, I dissent from that portion of the opinion vacating the district court's order granting judgment notwithstanding the verdict.

The majority opinion recognizes that Mrs. Dawson was negligent per se in failing to stop at the stop-sign line as required by statute, I.C. § 49–751(d), and tacitly, at least, recognizes she was also in violation of I.C. § 49–729(b), set forth in the majority opinion, *supra,* for failing to yield. The majority opinion, while giving lip service to the statutory requirements, is somehow able to accept the appellants' contention that failure to stop did not proximately cause the accident and that failure to yield under the facts was not negligence. It is my conclusion this is contrary to the uncontroverted facts of this case and a misconstruction of the applicable law.

Certain facts are clear and undisputed. Mrs. Dawson stopped her pick-up behind the large semi-trailer truck which had stopped at the stop sign. The semi-trailer truck was more than sixty-five feet in length, which would have placed the Dawson vehicle some additional distance back from the stop sign. The driver of the truck-trailer observed the roadway to the left, saw it was clear, and proceeded to enter the intersection and make his turn to the left, clearing the intersection prior to the time that the Olson vehicle approached. Contemporaneously with the movement of the truck-trailer, Mrs. Dawson commenced to follow this large vehicle. The driver of the car which had stopped behind the Dawson pick-up testified that at no time did Mrs. Dawson apply her brakes, which would have shown from the pick-up's brake lights, but that the Dawson vehicle just proceeded out onto the through highway. While this movement of the truck-trailer was in progress, with the Dawson pick-up following, the Olson Mercury sedan was proceeding westerly. Appellants claimed that by reason of the crown of the overpass, and obstructions to her view, Mrs. Dawson could not have seen this vehicle as it approached. That may have been true during the early stages of Mrs. Dawson's movement towards the intersection, but the closer she approached this intersection, the closer the Olson vehicle came to the point of impact. By the time that the front end of the pick-up truck crossed over the stop-line, of necessity the Olson vehicle had to be well within the range of Mrs. Dawson's view.

Examination of the vehicles after the accident shows that the Olson vehicle struck the Dawson pick-up behind the left front wheel, and the record reflects that the accident happened in the west bound lane of traffic. This simply means that Mrs. Dawson had proceeded only a relatively short distance—less than half the length of

her vehicle into the intersection—before it was hit by the Olson vehicle. For this accident to have happened, of necessity the Olson vehicle, with its lights on, was in the near vicinity of the intersection at the time Mrs. Dawson drove out into it. The driver of the truck stated that he saw the accident happen in his rear-view mirror, and that he observed the Olson vehicle pass his truck just as he straightened out—which according to his testimony was west of the overpass itself—about 150 feet from the intersection. This places the Olson vehicle in such a position that Mrs. Dawson had the absolute duty to yield to the Olson vehicle "which [was] approaching so closely on said roadway as to constitute an immediate hazard." I.C. § 49–729(b). In other words, as a matter of law under the facts of this case, at the time the Dawson vehicle was at the point of the stop line, the Olson car was so close as to constitute an immediate hazard. It cannot be said that any reasonable person would have failed to see this vehicle at that time and place. The headlights of the Olson car were on and the air was clear. There is nothing in the record to bring Mrs. Dawson within any one of the exceptions of Bale v. Perryman, 85 Idaho 435, 380 P.2d 501 (1963).[1]

It is difficult to understand how the Court concludes there are substantial facts to support the jury verdict ·in this case when one considers the purpose of enactment of "stop sign" and "right of way" statutes such as I.C. § 49–751 and § 49–729. The very purpose of such statutes is to provide for safe progress on a highway. That is, a person on a through highway shall have the right to assume that others entering that highway do so only when the roadway is clear, and, if it is not clear that they will wait until oncoming traffic is through the intersection. In Stucki v. Loveland, 93 Idaho 253, 460 P.2d 388 (1969), appellants' decedent occupied a car which ran a stop sign and was hit by respondent's truck. The appellants alleged the truck was exceeding the safe and reasonable speed which, appellants contended, raised a question of fact for a jury as to who was negligent. This Court's opinion indeed stated that "[a]t the time of the accident the roads in the area were snow covered and slick." Nevertheless, the district court's order granting summary judgment in favor of the respondent truck driver was unanimously affirmed by this Court. The reasoning of this Court is instructive.

"Appellants additionally contend that even if Hahn was traveling only 40 miles per hour under the existing road conditions the reasonableness of such speed presented an issue of fact for resolution by the jury by reason of the provisions of I.C. § 49–701. There might be more merit to this contention if the in-

---

1. My examination of the record shows that the jury was not instructed in accordance with Bale v. Perryman, a case which sets out the four excuses by which a driver who violates a mandatory statutory duty may avoid the charge of contributory negligence. The rule of that case reads as follows:

   "It is generally held that in civil actions for damages, where injury occurs as a proximate result of a violation of a statute enacted for the protection of motorists, such violation constitutes negligence per se. [Citations.] It must be recognized that certain circumstances furnish an excuse or justification for the negligence presumed to arise on proof of violation of a statute or ordinance. Such circumstances may generally be classified in four categories: (1) Anything that would make compliance with the statute impossible; (2) Anything over which the driver has no control which places his car in a position violative of the statute; (3) An emergency not of the driver's own making by reason of which he fails to obey the statute; (4) An excuse specifically provided by statute [citation]." 85 Idaho at 442–443, 380 P.2d at 505.

   The Court today also ignores the teaching of two cases which followed Bale v. Perryman, i. e. Haakonstad v. Hoff, 94 Idaho 300, 486 P.2d 1013 (1971), and Werth v. Tromberg, 90 Idaho 204, 409 P.2d 421 (1965).

tersection involved in this case was not one where the road on which the Cadillac was traveling was controlled by a 'stop' sign. I.C. § 49–751(d) places the duty upon the driver of the vehicle approaching the stop sign to stop before entering the controlled intersection. Other vehicles approaching such a controlled intersection are entitled to rely upon the mandatory provisions of that statute. Foster v. Thomas, 85 Idaho 565, 382 P.2d 792 (1963); Salcido v. Bates, 436 S.W.2d 934 (Tex.Civ.App.1968); Godwin v. LaTurco, [272 Cal.App.2d 475] 77 Cal.Rptr. 305 (Cal.App.1969); Barwood, Inc. v. Georgi, 253 Md. 29, 251 A.2d 596 (1969); Gates v. Green, 214 So.2d 828 (Miss.1968); Annot. 3 A.L.R. 3d 180, at § 7, p. 255. It is the duty of the driver approaching the stop sign to come to a halt and determine if it is safe to proceed across the highway; it is not the duty of the driver of the vehicle on the sign-protected through highway to assume drivers will violate such mandatory statutory duty. Foster v. Thomas, supra; Coughran v. Hickox, 82 Idaho 18, 348 P.2d 724 (1960).

"In this case where there was a direct violation of the mandatory provisions of the statute and no explanation or justification offered for such violation, the proximate cause of the accident could not be attributed to anything other than the failure of the driver of the Loveland vehicle to stop at the stop sign before proceeding through the intersection. See Greyhound Corp. v. Sparks, 283 F.2d 44 (5th Cir. 1960); Davis v. Brooks Transp. Co., 186 F.Supp. 366 (D.C.Del. 1960); Sun Cab Co. v. Cusick, 209 Md. 354, 121 A.2d 188 (1956); Annot. 3 A. L.R.3d 180 at §§ 47–48, pp. 450–461. It is our conclusion that there were no actions on the part of respondent Hahn that could be considered as a proximate cause of the accident." 93 Idaho at 257, 460 P.2d at 392.

In the present case the Dawson children contend that Olson's speed was an essential factor which would obviate the failure to stop; that is, they argue that if the through vehicle had been going a reasonable and safe speed there would have been no crash. However, this Court clearly adopted the rule that the driver of the car failing to stop had to *explain* or *justify* his *failure to stop* and if no justification were offered then, as a matter of law, "the proximate cause of the accident could not be attributed to anything other than the failure of the driver of the * * * vehicle to stop at the stop sign before proceeding through the intersection." Stucki v. Loveland, *supra*, 93 Idaho at 257, 460 P.2d at 392.

This same analysis surely must be utilized here if Idaho law relating to highways is to be consistently applied. The order granting judgment notwithstanding the verdict ought to be affirmed.